# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| KEVIN GARBER,<br>t/a CARPENTRY UNLIMITED,<br><br>        Petitioner,<br><br>v.<br><br>NEW CASTLE COUNTY DEPARTMENT<br>OF LAND USE and NEW CASTLE<br>COUNTY BOARD OF LICENSE,<br>INSPECTION & REVIEW,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. N16A-05-012 AML<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: December 13, 2016
Decided: March 31, 2017

## ORDER

**Upon *Certiorari* Review from the New Castle County Board of License,
Inspection, and Review: AFFIRMED**

1.     The petitioner seeks *certiorari* review of a decision of the New Castle County Board of License, Inspection, and Review that affirmed a New Castle County hearing officer's decision. The bases for the petition involve alleged errors and irregularities in the Board's decision, but consideration of those alleged errors would require a searching review of the Board's decision and the underlying factual record. The true issue presented by the petition is the proper scope of the record this Court may consider for *certiorari* review. That issue is governed by settled Delaware law and requires affirmance of the decision below.

## BACKGROUND

2. In August 2012, Kevin Garber, trading as Carpentry Unlimited, contracted with Deborah Wartel and Amy Podolsky (the "Homeowners") to build a home at 510 Bellevue Road, Wilmington, Delaware, 19809. The New Castle County Department of Land Use (the "Department") issued a building permit to Mr. Garber on August 21, 2012 and a certificate of occupancy to the Homeowners on July 26, 2013. On January 20, 2016, the Department issued to Mr. Garber two violation notices for various violations of New Castle County Code, Chapter 6, which is New Castle County's Building Code.[1]

3. On February 9, 2016, New Castle County (the "County") held a rule to show cause hearing (the "RTSC Hearing") to address both violation notices. A hearing officer conducted the five-hour hearing wherein a County building inspector, Michael Fox, Mr. Garber, Mr. Garber's attorney, the Homeowners, the Homeowners' attorney, and a number of other witnesses testified.[2]

4. On February 24, 2016, the hearing officer issued a written decision finding Mr. Garber responsible for eight of eighteen violations (the "RTSC Decision").[3] On March 7, 2016, Garber appealed the RTSC Decision to the License, Inspection, and Review Board (the "Board").

---

[1] Compl. Exs. A, B.
[2] Resp't's Answering Br. 31.
[3] Pet'r's Opening Br. 1.

5.     The Board held a hearing on May 11, 2016, which lasted approximately eight hours.  At that hearing, both parties sought to present testimony from witnesses who had not testified at the RTSC Hearing.  In response to objections to that testimony, the Board precluded both witnesses from testifying and heard only from those witnesses who testified at the RTSC Hearing.[4]  The Board issued a 23-page opinion (the "Board Decision) denying Mr. Garber's appeal on the basis that the hearing officer's decision was not arbitrary, capricious, or contrary to law.[5]

6.     On May 26, 2016, Mr. Garber filed a complaint in this Court for a certificate of *certiorari* to review the RTSC Decision and Board Decision.  In support of his petition for a writ, Mr. Garber now asserts: (1) the Board failed to calculate properly the statute of limitations; (2) the Board failed to apply properly the doctrines of *Spearin*[6] and equitable estoppel; and (3) the Board proceeded irregularly by (a) relying on an unqualified and unauthorized expert, (b) shifting the burden of proof to Mr. Garber, and (c) excluding evidence.  The Department denies any legal errors exist on the face of the record or that Mr. Garber can show any irregularities in the proceedings and therefore requests that the writ be denied and the Board's decision affirmed.

---

[4] Pet'r's Opening Br. App. P121 n. 6.
[5] *Id.* at P117.
[6] *See United States v. Spearin*, 248 U.S. 132 (1918).

3

## ANALYSIS

7.     This Court's role in reviewing a writ of *certiorari* is limited.[7] The Court shall review the record to determine whether the Board "exceeded its jurisdiction, proceeded illegally or manifestly contrary to law, or proceeded irregularly."[8]  *Certiorari* is appropriate only when "an error of law is manifest on the face of the limited record."[9]  That limited record includes only "the complaint initiating the proceeding, the answer or response (if required), and the docket entries."[10] Neither the evidence received by the lower tribunal,[11] nor the transcript of that proceeding, is part of the record to be reviewed.[12]

---

[7] *Black v. New Castle Cty. Bd. of License*, 117 A.3d 1027, 1030 (Del. 2015) (citing *In re Butler*, 609 A.2d 1080, 1081 (Del. 1992)).

[8] *Black*, 117 A.3d at 1031 (citing *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (citing 1 Victor B. Woolley, Woolley on Delaware Practice, § 896, 939 (1906))).

[9] *Black*, 117 A.3d at 1032 (citing *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1106 (Del. 2003)); *Maddrey v. Justice of Peace Ct. 13*, 956 A.2d 1204, 1213 (Del. 2008) (emphasis in original) (citing *Du Pont v. Family Ct. for New Castle Cnty.*, 153 A.2d 189, 194 (Del. 1959) ("A writ of certiorari is *not* a substitute for, or the functional equivalent of, an appeal.")).

[10] *Black*, 117 A.3d at 1030 (internal quotations omitted) (citing *Maddrey*, 956 A.2d at 1216).

[11] *Du Pont*, 153 A.2d at 194.

[12] *See Black*, 117 A.3d at 1030 (citing *Maddrey*, 956 A.2d at 1216 ("[T]he official record delivered by the Justice of the Peace Court to the Superior Court in response to the issuance of a common law writ of *certiorari* does not properly include a transcript of the evidentiary proceedings."); *In re Butler*, 609 A.2d at 1082 (holding that only the order of the court holding Butler in contempt, not the full transcripts of the proceedings, were properly part of the record for *certiorari* review)); *Green v. Sussex Cty.*, 668 A2d 770 (Del. Super. 1995) (citing *Goldstein v. City of Wilm.*, 598 A.2d 149 (Del. 1991); *Shoemaker v. State*, 375 A.2d 431 (Del. 1977); *In re Butler*, 609 A.2d 1080; *Brandywine Secs., Inc. v. Dep't of Licenses and Inspection*, 1993 WL 18784 (Del. Super. Jan. 22, 1993); *Rodenhiser v. Dep't of Public Safety*, 137 A.2d 392 (Del. Super. 1957)), *aff'd*, 667 A.2d 1319 (Del. 1995) (TABLE).

4

8.     Garber contends the Board misapplied the time of discovery rule and failed to make any factual findings as to when the injury occurred or as to why the Department is "blamelessly ignorant in failing to discover[] the allege[d] code violations" sooner.[13] Mr. Garber further contends the Board erred by failing to apply or make factual findings relating to the *Spearin* Doctrine or equitable estoppel.[14]

9.     The record here, however, does not indicate that the Board erroneously measured the statute of limitations or misapplied the *Spearin* Doctrine or equitable estoppel.     Adhering to the necessary "disciplined and more constrained review" required on a petition for a writ of *certiorari*, I may not consider the "merits of the case"[15] or the "full record before the first tribunal," or "conduct a plenary review of whether the tribunal committed an error of law."[16] To receive a writ of *certiorari*, a petitioner must show an error of law on the face of the record.

---

[13] Pet'r's Opening Br. 11.
[14] *Id.* at 28, 31.
[15] *Black*, 117 A.3d at 1029; *Maddrey*, 956 A.2d at 1213.
[16] *Black*, 117 A.3d at 1029, 1032-33 (citing *Shoemaker*, 375 A.2d at 437 (internal quotations omitted) ("A *certiorari* proceeding differs fundamentally from an appeal in that the latter brings the case up on its merits while the . . . (former) brings up the record only so that the reviewing court can merely look at the regularity of the proceedings.")); *Maddrey*, 956 A.2d at 1213.

10.    In its decision, the Board discussed (for two pages) when the injury occurred and, specifically, why the statute of limitations had not run on the violations.[17] As to the *Spearin* Doctrine and equitable estoppel, the Board stated:

> [T]he Applicant cited no cases where the *Spearin* Doctrine was applied in an administrative enforcement proceeding. . . . [The Applicant] had the responsibility of complying with the building code. A licensed contractor is presumed to know the Code and should not be heard to say that he can violate that Code because his client told him to do so.
>
> Applicant's *Spearin* argument is further flawed on the facts. Applicant never proved the requisite facts necessary to demonstrate the type of reliance that *Spearin* requires to successfully assert that defense. Moreover, many of the Code violations had nothing to do with the building design.
>
> This analysis regarding Applicant's *Spearin* argument and related discussion in this Board Decision also apply to the doctrines of equitable estoppel, promissory estoppel, and justifiable reliance. These doctrines were mentioned briefly by the Applicant in its papers and/or at the Board Hearing. The Applicant never developed the necessary factual and legal foundation for [the] application of these doctrines.[18]

11.    The Board's conclusions regarding the statute of limitations, *Spearin*, and estoppel were based on its consideration of the factual record. The narrow question before this Court is whether the Board proceeded illegally or in a

_____

[17] Pet'r's Opening Br. App. P136-137 ("There is ample evidence in the record that each of the doctrines of inherent unknowable injury and equitable tolling apply here. . . . First . . . . Second . . . . Third . . . .").
[18] *Id.* at P135-P136.

6

manner manifestly contrary to the law. Mr. Garber has not made such a showing. Accordingly, his petition for a writ of *certiorari* is denied on that basis.

12. Mr. Garber also asserts that the proceedings below were conducted with irregularity because: (1) the violation notices were based on biased, unauthorized, and unqualified expert opinions; (2) the Board improperly excluded a witness's testimony; and (3) the burden of proof inappropriately was placed on Mr. Garber.[19]

13. A "writ exists to ensure that the [lower] tribunal is proceeding regularly and attempting to do its job within its legal authority."[20] "Reversible procedural irregularity includes a tribunal's failure to create an 'adequate record' for judicial review."[21]

14. It is clear the Board took the parties' arguments seriously; it held an eight-hour hearing and received evidence and sustained objections from both sides.[22] As to the expert opinions, the Board stated:

> The *cause* of the water and moisture problems correlate
> in part, but not in whole, to the Code Violations. Thus,

---

[19] Pet'r's Opening Br. 14.

[20] *Black*, 117 A.3d at 1032 (citing *Dover Historical Soc'y*, 838 A.2d at 1106 (internal quotation marks omitted) ("The purpose of *certiorari* is to correct errors of law, to review proceedings not conducted according to law, and to restrain an excess of jurisdiction.")).

[21] *Black*, 117 A.3d at 1032-31 (citing *Christiana Town Ctr.*, 2004 WL 2921830, at *2 (citing 1 Victor B. Woolley, Woolley on Delaware Practice, § 896, 939 (1906) ("A decision will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review.")).

[22] *See Black*, 117 A.3d at 1032-33 ("Here, it is plain that the Board took the arguments before it seriously, held several hearings, and received evidence from all sides.").

7

to a certain extent, the Board need not evaluate the opinions of those battling litigation experts. The Board need only determine whether there was sufficient testimonial and/or documentary evidence for the Department to find that the Code Violations existed, and that therefore the RTSC Decision was not arbitrary and capricious.[23]

15. Mr. Garber argues that the Department's assertion that another inspector verified each violation – which was to overcome this witness's lack of qualifications – just "cannot be true."[24] This, however, is exactly the type of factual disagreement this Court cannot review. The Board was within its legal authority to affirm the RTSC Decision if it was not arbitrary, capricious, or contrary to law.[25] Therefore Mr. Garber has failed to show a legal error on the face of the record or a reversible irregularity.

16. The Board likewise was within its legal authority to reject additional testimony. As the Board noted in its decision: "Appeals shall not be used to consider new or additional information."[26] Moreover, Mr. Garber alleges his witness who was excluded from testifying in front of the Board "was present at the RTSC Hearing . . . and offer[ed] testimony."[27] The Department argues Mr. Garber's claim that a witness provided additional evidence at the Board hearing "is simply false" and that Mr. Garber's proffered witness did not testify at the RTSC

---

[23] Pet'r's Opening Br. App. P122-P123 (emphasis in original).
[24] Pet'r's Opening Br. 18.
[25] Pet'r's Opening Br. App. P120.
[26] *Id.*
[27] Pet'r's Opening Br. 26.

Hearing.[28]  Again, the myriad factual disputes that still exist illustrate yet another reason why this Court must give deference to the Board's written decision.[29]  Mr. Garber insists that the Board's Decision only can be rationalized as an error of law, but to reach that conclusion I would be required to disregard the *certiorari* standard and engage in a complete review of the record.[30]

17.    Mr. Garber next argues the Board and the hearing officer improperly shifted to him the burden of proving the non-existence of the code violations. This argument fails procedurally.   First, Mr. Garber argues the hearing officer's conclusions were not supported by substantial evidence, citing *Quaker Hill Place v. Saville*.[31]  The standard *Quaker Hill* discusses, however, relates to a decision of the State Human Relations Commission and an appeal of that decision under Delaware's Administrative Procedures Act.[32]  That standard fundamentally is distinct from the standard applicable to *certiorari* review.  In the procedural posture of this case, this Court has no basis to review the Board's Decision or the RTSC Decision to determine whether they were supported by substantial evidence. Rather, I am limited to determining whether an error of law is manifest on the face of the limited record.  Second and as to that "limited record," the support Mr. Garber cites for his contention that the burden improperly was shifted consists of

---

[28] Resp't's Answering Br. 28, 31.
[29] *See Black*, 117 A.3d at 1033.
[30] *Id.*
[31] 523 A.2d 947 (Del. Super. 1987).
[32] *Id.* at 952-53.

testimony offered at the RTSC Hearing. Testimony or evidence received by the lower tribunal is not part of the "limited record" reviewed by this Court in connection with a petition for a writ of *certiorari*.

**CONCLUSION**

For the foregoing reasons, the June 21, 2016 decision of the License, Inspection, and Review Board is **AFFIRMED. IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Scott T. Earle, Esquire
       Mary M. Jacobson, Esquire
       Bernard V. Pepukayi, Esquire